IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:16-cr-00093 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | **ORDER** |
| | : | |
| DAVID M. NORRIS, | : | |
| | : | |
| Defendant. | : | |

 This matter is before the Court on Defendant's Motion to Sever Count Three from Counts One and Two in the Indictment (Doc. 19), which the Government opposes (Doc. 24).  Defendant has filed a reply, along with a Motion to Exclude Prior Conviction.  (Doc. 25.)  Also before the Court, and related to Defendant's Motions to Sever and to Exclude, is the United States' Notice of Intent to Introduce Evidence Pursuant to F.R.E. 404(b)(2), and its request that the Court issue a ruling *in limine* that evidence of Defendant's other crimes, wrongs, or acts are admissible at trial.  (Doc. 27.)  Defendant has filed a Reply in Opposition to the Government's Notice to Admit Other Acts Evidence Under Rule 404(b).  (Doc. 28.)  A hearing took place on February 21, 2017 as to all matters.  (Docs. 29–31.)  With the Court's approval, Defendant filed a post-hearing supplemental memorandum.  (Doc. 32.)

 For the reasons that follow, Defendant's Motion to Sever will be DENIED, but his alternate Motion to Bifurcate will be GRANTED; and Defendant's Motion to Exclude will be GRANTED IN PART and DENIED IN PART.  As to the United States' Rule 404(b)(2) Notice, this Court determines that evidence of Defendant's acts that underpin his 2005 state law conviction will be ADMISSIBLE at trial for the sole purpose of identity.

I.   BACKGROUND

   A.  The Pleadings

   1.  **Defendant's Motion to Sever, or in the Alternative, Bifurcate**

Defendant is charged with advertising child pornography in violation of 18 U.S.C. § 2251(d) (Count 1), distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), § 2252(b)(1) (Count 2), and penalties for registered sex offenders as set forth in 18 U.S.C. § 2260A (Count 3).  (Doc. 1.)  Notably, Count 3 of the indictment becomes relevant only if the United States is able to secure a conviction on Count 1, advertising.  This is because Count 2, distribution, is not one of the enumerated federal offenses that triggers the enhanced statutory penalty under § 2260A, which reads as follows:

> Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section 1201, 1466A, 1470, 1591, 2241, 2242, 2243, 2244, 2245, **2251**, 2251A, 2260, 2421, 2422, 2423, or 2425, shall be sentenced to a term of imprisonment of **10 years in addition** to the imprisonment imposed for the offense under that provision.  The sentence imposed under this section shall be **consecutive** to any sentence imposed for the offense under that provision.

(Emphasis added.)  To secure a conviction on Count 3, then, the United States must prove that Defendant committed the federal offense of advertising child pornography as alleged in Count 1 *and* that he committed that offense while being required to register as a sex offender.  Thus, as to the second element, the United States will be required to introduce evidence related to Defendant's prior state conviction, attempted unlawful sexual conduct with a minor in violation of Ohio Rev. Code § 2923.02.

Defendant acknowledges that all three counts are correctly joined under Fed. R. Crim. P. 8(a). (Doc. 19 at PageID 47.)  But, pursuant to Fed. R. Crim. P. 14(a), he asks the Court to sever Count 3 from Counts 1 and 2, claiming prejudice.  (*Id.* at PageID 45, 47, 50.)  Because it

necessarily results in a "multiplicity"[1] of litigation, a defendant must show "compelling, specific, and actual prejudice" that would result from a trial court's refusal to sever. *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).

In support of substantial prejudice, and noting the context of a child pornography prosecution, Defendant cites *United States v. Stout*, 509 F.3d 796 (6th Cir. 2007). There the Government filed a notice of intent to introduce evidence of Stout's state court conviction for surreptitiously videotaping a neighbor's 14-year-old daughter in the shower to demonstrate his "knowledge and intent to receive and possess child pornography, as well as lack of mistake or accident." *Id*. at 798 (internal citation and quotation omitted). Stout then filed a motion *in limine* pursuant to Fed. R. Evid. 404(b) and 403,[2] asking the trial judge to suppress evidence of the prior conviction as significantly more unfairly prejudicial than legitimately probative. The district court granted the motion *in limine* and excluded the prior bad acts evidence, and the Sixth Circuit affirmed. *Id.* at 799–804. The Sixth Circuit observed:

> The public regards sexually-based offenses as particularly heinous. Sex offenders are required to register in the communities in which they live because of the perceived danger that they will act in conformity with their prior bad acts. In this respect, admission of prior convictions for sex crimes under Rule 404(b) in sexually-based offense cases presents a greater risk of the always present danger that the jury will convict the defendant on an improper basis—the propensity inference. A district court is free to consider that potential for unfair prejudice in its balancing.

*Id.* at 802. The district court also noted that a limiting instruction would be insufficient to guard against unfair prejudice, and the Sixth Circuit agreed. *Id*. Additionally, Defendant cites *United*

---

[1] Severance would require impaneling two juries, a costly proposition that district courts typically wish to avoid.
[2] Fed. R. Evid. 403 reads as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: **unfair prejudice**, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

(Emphasis added.)

3

*States v. Hough*, 385 F. App'x 535 (6th Cir. 2010), which affirmed a district court's decision to exclude from a child pornography (attempted receipt and possession) prosecution two reports of child molestation, a state criminal conviction for child molestation, and a state civil default judgment for child molestation. The evidence was admissible under Fed. R. Evid. 414 (Similar Crimes in Child-Molestation Cases), but the district court did not err in excluding it under Rule 403. *Id.* at 536.

As an alternative to severance, because Fed. R. Crim. P. 14(a) allows a court to "provide any other relief that justice requires," Defendant asks for bifurcation, permitting the jury to hear evidence related to Count 3 only if the United States first secures a conviction on Count 1. (*Id.* at PageID 45, 47, 51.)[3] In support, Defendant cites *United States v. Never Misses A Shot*, No. 13-30013-RAL, 2013 WL 3872837 (D.S.D. July 25, 2013). In that case the defendant was indicted with two counts of aggravated sexual abuse of a child and two counts of abusive sexual contact of a child. *Id.* at *1. He also was accused of having committed the abusive sexual contact in one of the two counts at a time when he was required to register as a sex offender, and so he likewise was charged with a violation of § 2260A. *Id.* To avoid "any possibility that the jury might infer [the defendant] is guilty of Counts I through IV because of his alleged status as a registered sex offender," the trial judge agreed to conduct the trial in two phases. *Id.* at *3.

In response, the United States argues that Defendant's assertion of prejudice is conclusory and, regardless, his prior conviction would be admissible under Fed. R. Evid. 413 and 414. (Doc. 24 at PageID 60.) It does not attempt to distinguish *Never Misses A Shot*. The

---

[3] Specifically, Defendant states that "[w]hile Mr. Norris is requesting severance of the counts, he acknowledges and would be agreeable to a bifurcated trial, as it is an equally effective avenue to provide the relief he is seeking." (Doc. 19 at PageID 51.) At the February 21, 2017 hearing discussed *infra*, defense counsel stopped short of withdrawing her client's request to sever, but acknowledged again that bifurcation would be a more practical solution.

4

United States' brief prompted not only a reply from Defendant[4] but also a preemptive Motion to Exclude Prior Conviction. (Doc. 25.) The United States' formal Rule 404(b)(2) Notice followed. (Doc. 27.)

### 2. The United States' Notice of Intent to Introduce Evidence Pursuant to Fed. R. Evid. 404(b)(2)

Evidence of a "crime, wrong, or other act" is inadmissible to prove propensity, but admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2). This rule "actually is a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Carney*, 387 F.3d 436, 450 n.11 (6th Cir. 2004) (citation and quotation omitted).

At trial, the United States seeks to introduce evidence of Defendant's prior 2005 conduct of utilizing a similar screen name, engaging in similar conversations regarding the sexual abuse of children, and using identical verbiage as alleged with respect to the current charged offenses. (Doc. 27 at PageID 75.) The United States is not seeking to introduce the fact that Defendant was *convicted* in connection with his 2005 conduct; rather, it wishes to introduce only the *acts themselves* because of their "extraordinary" similarities to his conduct in 2012. (*Id.*) The United States contends that the other acts evidence is admissible to establish Defendant's identity and to show his motive, intent, and knowledge in committing the crimes charged. (*Id.* at PageID 76–82.)

---

[4] Defendant challenges the assertion that his prior conviction is admissible under either Fed. R. Evid. 413 or 414. (Doc. 25 at PageID 65–66.) The Court agrees. On its face, Rule 413 does not apply because it addresses admission of a prior "sexual assault" in a case involving an accusation of "sexual assault." (*Id.*) As to Rule 414, the allegation of advertising child pornography does meet the definition of "child molestation." Still, it does not pertain, because the Rule defines "child" as a person *below* the age of 14 and the "victim" in Defendant's prior state conviction was an undercover officer posing as a *14-year-old* female. (*Id.* at PageID 66.) At the February 21, 2017 hearing discussed *infra*, the United States confirmed that it would not seek to introduce evidence of Defendant's prior conviction, or the facts underlying that conviction, pursuant to Rule 414.

a. **Current Charged Offenses**

In its Notice, the United States proffered the following facts with respect to the current charged offenses. In May 2012, an undercover investigator working with the Woodstock, Virginia police was conducting online child pornography probes. (*Id.* at PageID 72.) Portraying himself to be a 37-year-old mother of two girls (ages seven and twelve), the investigator entered a chat room on an "UnderNet"[5] server. (*Id.*) An individual using the screen name "Hrtcnt" initiated a private chat with him, beginning their exchange with "hello, were you used young." (*Id.*) Later in the chat "Hrtcnt"—who stated he was 30-years-old[6]—asked the investigator, "Do your girls get used?" (*Id.*) "Hrtcnt" also stated he had had sex with a six-year-old girl in the past, whose mother was a "stripper/escort" and out at night. (*Id.* at 73.) "Hrtcnt" told the investigator that he did not trade child pornography in the chat room in which they were conversing. (*Id.*) However, he posted a direct link to the tor[7] browser and gave the investigator his screen name and added him as a friend. (*Id.*) When their conversation resumed, "Hrtcnt's" screen name changed to "wntlilgrl," who then provided links to a "bunch of vids" and a "bunch of pics"—both depicting child pornography—as well as links to other webpages where child pornography could be accessed. (*Id.*) "wntlilgrl" also sent a video depicting what appeared to be an adult male having anal sex with a small child, who, according to "wntlilgrl," was two-years-old. (*Id.*) After sending the video, "wntlilgrl" asked the investigator, "When you think of lil girls being used do you prefer them to like it or don't care?" (*Id.*) Following up, "wntlilgrl"

---

[5] The United States represents that the "UnderNet" is a network of Internet Relay Channels on the Internet, allowing users to connect from multiple countries and numerous servers. (Doc. 27 at PageID 72 n.1.)
[6] The United States represents that Defendant turned 30-years-old the month prior. (Doc. 27 at PageID 72 n.2.)
[7] The United States represents that "tor," an acronym for "the onion routing," is a web browser designed for anonymous web surfing and protection against traffic analysis, providing protection from capturing Internet Protocol ("IP") addresses. (Doc. 27 at PageID 73 n.3.)

stated the he "get[s] harder when they don't like it" and he thinks "girls get used to it faster and are more obedient when they are hurt and punished more as well." (*Id.*)

During their initial chat, the investigator was able to capture "Hrtcnt's" IP address. (*Id.*) The service provider was Time Warner Cable/Road Runner in Ironton, Ohio, and the subscriber was Connie Norris, 114 S. 7th Street, Ironton, Ohio 45638. (*Id.* at PageID 73–74.) The matter then was referred to the Cincinnati Field Office for Homeland Security, where Defendant, a registered sex offender, was identified as a potential resident at the Ironton address. (*Id.* at PageID 74.)

### b. Other Acts Evidence

In its Notice, the United States proffered that an undercover officer with the Westerville, Ohio police department would testify that he engaged in an online chat with Defendant on June 10, 2005. (*Id.* at PageID 76.) During that chat, Defendant, using the screen name "hrtg_1," made statements to the effect that he likes to sexually hurt and abuse young girls. (*Id.*)

### B. The February 21, 2017 Hearing

During direct examination by the United States, as promised, City of Westerville Police Officer Brett Peachey testified that he engaged in an online chat with Defendant on June 10, 2005, posing as a 14-year-old girl. During the chat, Officer Peachey identified himself as "columbus_girl_larissa." Defendant, using the screen name "hrtg_1," asked "larissa" if she had been "used" before, and told her he liked to abuse girls and hurt them with sex. He asked her for sex, and promised to bring condoms and vodka. Defendant told "larissa" that he was 23-years-old and his name was David. He described himself as 6'3" tall and weighing 220 pounds, with auburn hair. "larissa" asked Defendant to call her cell phone when he was half-an-hour away from the address she gave him, and also asked what kind of car he would be driving. When

7

Defendant arrived in the vehicle he had described, Officer Peachey was waiting.  In Defendant's possession—besides condoms and vodka—were directions to the address given, along with the name "larissa" and "her" cell phone number written on a piece of paper.

The dialogue between "columbus_girl_larissa" and "hrtg_1" was transcribed and used as evidence in the successful prosecution of Defendant for attempted unlawful sexual conduct with a minor, which then required him to register as a sex offender under Ohio law.  Officer Peachey identified the transcript for this Court, which was admitted into evidence as Government Exhibit 1.  He identified Defendant, who was present in the courtroom, as the individual who arrived some 12 years earlier to have sex with "columbus_girl_larissa."

The United States also proffered two other transcripts, marked as Exhibit 2a ("MIRC Chat") and 2b ("TOR Chat").  Exhibit 2a memorializes an online chat beginning on May 10, 2012 at 14:00:43 initiated by "Hrtcnt" with "love4pedo," the screen name used by the Woodstock, Virginia investigator.  Exhibit 2b is the transcript of the follow-up conversation between "wntlilgrl" and "myself" on the tor browser that begins at 15:39:27 and ends at 16:41:36.

## II.     ANALYSIS

The Court will consider first whether the other acts evidence described in the United States' Notice will be admissible at trial, as this decision will inform our rulings on Defendant's pending motions.

### A.  The United States' Rule 404(b)(2) Notice

In deciding whether to admit evidence of Defendant's 2005 conduct under Rule 404(b), a court must determine whether:  (1) sufficient evidence exists that the other acts occurred; (2) the other acts are admissible for a proper purpose; and (3) the probative value of the evidence is

8

substantially outweighed by the danger of unfair prejudice or the other concerns under Fed. R. Evid. 403. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (citation omitted); *United States v. Bell*, 516 F.3d 432, 440–41 (6th Cir. 2008) (quotation and citation omitted). Each factor will be addressed in turn.

### 1. Did the other acts occur?

The United States has more than met its burden in this regard. Officer Peachey's testimony, combined with the chat transcript he identified, provides an ample basis upon which a jury reasonably could conclude "that the act occurred and that the defendant was the actor." *United States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). *Johnson* reiterates the principle that the testimony of a single witness can be sufficient, even if that witness "is less than completely reliable." *Id.* (citing *United States v. Matthews*, 440 F.3d 818, 828–29 (6th Cir. 2006)). Hence, defense counsel's attempt to discredit Officer Peachey—by challenging his ability to identify Defendant on February 21, 2017 as the same individual he arrested nearly 12 years ago—does not alter this Court's finding.

### 2. Are the other acts admissible for a proper purpose?

As recited earlier, the United States contends that the other acts evidence is admissible to establish Defendant's identity and to show his motive, intent, and knowledge in committing the 2012 crimes charged.

#### a. Identity

The United States advises that identity will be a "central" issue at trial on Counts 1 and 2. (Doc. 27 at PageID 77.) "Hrtcnt's" IP address was traced to a Connie Norris in Ironton, Ohio. (*Id.*) Connie Norris is Defendant's mother. (*Id.*) And even though he rented an apartment in

9

Columbus, on May 10, 2012 Defendant happened to be staying with her. (*Id.*) His two brothers, however, also were staying at the Ironton address. (*Id.*) Thus, at trial, it will be necessary for the United States to prove that Defendant—as opposed to his mother or either one of his two brothers—advertised and distributed child pornography. (*Id.*)

"Prior acts or crimes can be admitted to show identity, provided they are 'of sufficient distinctive similarity' with the charges in the indictment to 'create a pattern or modus operandi.'" *United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) (quoting *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006)). The crimes need not be "identical in every detail." *Perry*, 438 F.3d at 648 (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982)). Moreover, "standard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature.'" *United States v. Mack*, 258 F.3d 548, 554 (6th Cir. 2001).

Linking Defendant's 2005 chat with the 2012 chats are three "distinctive patterns" according to the United States. First, the online chat handles are similar. On June 10, 2005, Defendant used the screen name "hrtg_1," which the jury reasonably could conclude is shorthand for "hurt girl." On May 10, 2012, the subject used the screen name "Hrtcnt," which the jury reasonably could conclude is shorthand for "hurt cunt."

The use of "hrt"—followed by a female reference—suggests a second similarity, in that both sets of chats repeatedly reference hurting young girls through sex. In the June 10, 2005 chat, Defendant, calling himself "hrtg_1," had the following exchange with Officer Peachey, posing as a 14-year-old girl:

    columbus_girl_larissa:  what do u like
    hrtg_1:  abusing girls
    columbus_girl_larissa:  oh yeah.
    columbus_girl_larissa:  how os

10

>columbus_girl_larissa: so
>hrtg_1: any way, sex, hurting them, . . .

(Government Exh. 1 at 1.) Defendant also stated that he liked to "beat" girls with a "hand, belt, electrical cord," and specific to "larissa," he wanted to "fuck and abuse you" and "spank you until you are to [sic] sore to touch." (*Id.* at 3, 4.) "Hrtcnt," known as "wntlilgrl" while on the tor browser, made comparable statements on May 10, 2012, telling "love4pedo" that "I get harder when they don't like it . . . I think girls get used to it faster and are more obedient when they are hurt and punished more as well." (Government Exh. 2b at 2.)

The third likeness centers around use of the word "used." At the beginning of the June 10, 2005 chat, after learning that "larissa" was 14-years-old, Defendant asked her, "Like to be *used*?" (Government Exh. 1 at 1 (emphasis added).) When "she" replied "sometimez," Defendant's immediate follow-up was, "How have you been *used* before?" and clarified that he meant "regular sex." (*Id.* (emphasis added).) In like fashion, in the first chat on May 10, 2012 on the UnderNet, "Hrtcnt's" very first question to "love4pedo" was, "Hello, were you *used* young?" (Government Exh. 2a at 1 (emphasis added).) When their chat resumed some 45 minutes later on the premise that "love4pedo" needed to pick up "her" girls (ages seven and twelve), "Hrtcnt's" began with "Do your girls get *used*?" (*Id.* (emphasis added).) And, when chatting on the tor browser, "wntlilgrl" asks "love4pedo" her predilection, "When you think of lil girls being *used* do you prefer them to like it or don't care?" (Government Exh. 2b at 2 (emphasis added).)

Defendant disputes the existence of any sort of signature. He argues that the handle "hrtg_1" ends in the number "1," not in the letter "l." During cross examination, Officer Peachey was presented with the Incident Report and the Criminal investigation Summary he

11

completed in connection with Defendant's arrest in 2005.[8]  And, indeed, he confirmed that he recorded Defendant's chat handle as ending in the number "1" on both documents.  Defendant contends that little is unique about the first three letters of the screen names—"hrt"—a truncation that could just as easily stand for something completely innocuous, like "heart" instead of "hurt."  Defendant also argues that the 2005 chat provides significant detail about the speaker's sexual proclivities, noting a preference to abuse through spanking and beating with a hand, belt, or electrical cord.  In contrast, though, "wntlilgrl" on the tor browser stated he simply preferred sex with girls who "don't like it."  Finally, Defendant contends that the speaker's employment of the word "used" in both the 2005 and 2012 chats is a "normal" use of that term and should be interpreted vis-à-vis "relationships, breakups, and human interactions."  (Doc. 28 at PageID 96–97 ("he used me [for sex]" and "I felt used [for sex]").)

       The Court appreciates the very creative arguments of defense counsel on paper and in the courtroom, but is not persuaded by them.   Regarding the screen handles, Officer Peachey's perception in 2005 that Defendant's name ended in the number "1" rather than the letter "l" is not determinative.  In the Times New Roman font, in which this Order is memorialized, the number "1" and the letter "l" look sufficiently alike to be mistaken for one another.  In the `Courier New font`, in which the transcript of the 2005 chat appears, `the number "1" and the letter "l"` look remarkably the same.  This resemblance—considered in the framework of the conversations in 2005 and 2012 about girls being "used"[9] for forced, forceful, and rough sex—convinces the Court that there is a "distinctive pattern" between the chats in which "hrtg_1" (in 2005) and "Hrtcnt" (in 2012) engaged.

---

[8] These documents were marked as Defendant's Exhibits 1 and 2, respectively, but were not moved into evidence.
[9] Defense counsel insists that use of the word "used" should be understood as merely the equivalent of one girlfriend complaining to another, "He used me for sex."  In the Court's view, though, that lament describes a victim of emotional manipulation, not sexual abuse.

"Signature" conduct is admissible to prove identity, as was the case in *United States v. Delaney*, 443 F. App'x 122 (6th Cir. 2011). Delaney was convicted of sexual exploitation of children, as well as distribution and possession of child pornography. *Id.* at 124. On appeal, he argued that the district court erred when, at trial, it admitted transcripts of instant message conversations with three undercover police officers pursuant to Rule 404(b) to show his knowledge and intent and the absence of mistake or accident. *Id.* at 130–33. The Sixth Circuit found that the transcripts were admissible not only for those purposes, but also for identity, a ground not considered by the district court:

> At trial, the government alleged that Delaney met Amanda, the victim in this case, on the Internet and communicated regularly with her using instant messaging from the screen name "Z Camaro Guy." Delaney's interactions with the three undercover police officers were the same: He met them on the Internet, communicated with them on instant messaging using the screen name "Z Camaro Guy," and sent them pictures of himself. These interactions indicate a pattern of behavior that is consistent with the charged offense. Accordingly, the evidence was admissible for purposes of identity. *See Perry*, 438 F.3d at 648 (affirming admission of other acts evidence that established a distinctive "signature").

*Id.* at 132.

Defendant Norris' attempts to distinguish *Delaney* are unconvincing. He accurately points out that Delaney used the exact same screen name, "Z Camaro Guy," in each of the chats. Defendant Norris notes additionally that his 2005 chat with Officer Peachey was one in which he solicited sex from "larissa," a girl he believed to be a minor, and the subject 2012 chats were with an adult about trading child pornography on the Internet. The Court does not read *Delaney,* in its application of *Perry*, as requiring that screen names be identical. Rather, what is required by *Perry* is "sufficient" distinctive similarity to establish a pattern. And, when considered in context, "hrtg_1" and "Hrtcnt" are sufficiently distinctive and sufficiently similar. In the course of soliciting sex from 14-year-old "larissa," at the beginning of their chat Defendant peculiarly

13

asked her if she liked to be "used," and persisting, then asked *how* she had been "used." Consistent with Defendant's 2005 chat, "Hrtcnt's" very first question to "love4pedo" was whether she was "used" young. Next, purportedly after "love4pedo" picked up her seven and twelve-year-old girls, "Hrtcnt" immediately asked if her girls get "used." And, once on the tor browser, "Hrtcnt" turned "wntlilgrl," unrelenting, asked "love4pedo" whether or not she preferred little girls being "used" to like it.

Sufficient evidence of a "signature" has been proffered by the United States. The other acts evidence, therefore, is admissible for a proper purpose, namely identity.

### b. Motive, Intent, and Knowledge

The Court does not believe, however, that the other acts evidence is admissible for motive, intent, or knowledge. On its face, the motive in the 2005 chat was to meet a girl and engage in rough sex. In the current charged offenses, the motive is to trade child pornography. These motives are distinctly different. Regarding intent, the Sixth Circuit recently clarified that "other acts evidence is permitted to show intent when the defendant is charged with a crime containing a specific intent element." *United States v. LaVictor*, No. 15-1580, 2017 WL 461009, at *9, ___F.3d___ (6th Cir. Feb. 3, 2017). Here, though, Defendant is charged only with general intent crimes,[10] and defense counsel represents that her client's defense "will not put intent at issue during the trial." (Doc. 28 at PageID 101–02.) The Court observes again that the 2005 chat and the current charged offenses involve distinctly different conduct, and occurred seven years apart. Thus, while properly considered for identity, the other acts evidence plainly is not probative of intent. *United States v. Bell*, 516 F.3d 432, 444 (6th Cir. 2008) ("[T]he prior

---

[10] "[A] specific intent crime is one that requires a defendant to *do more than* knowingly act in violation of the law." *United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998) (emphasis added) (citations omitted). "[A] general intent crime, by contrast, requires only that a defendant 'intend to do the act that the law proscribes.'" *Id.* (citations omitted).

14

convictions were for offenses that occurred several years previously and were not alleged to be part of the same scheme to distribute drugs or to involve a similar *modus operandi*. Such evidence of prior distribution, unconnected to the present charge, is not probative of whether Bell intended to possess and distribute drugs in the instant case."). Finally, as to knowledge, defense counsel also represents that her client's defense "does not involve challenging whether he *knowingly* intended to distribute and advertise child pornography." (Doc. 28 at PageID 100 (emphasis in original).) Based on such a proffer, the Court concludes that the other acts evidence is inadmissible for this purpose as well. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) ("Her defense at trial was that she did not know—and the Government had failed to prove otherwise—that the express mail package contained crack cocaine. Thus, Jenkins' knowledge was 'in issue' during her trial.").

      **c. Does the danger of unfair prejudice substantially outweigh the probative value of the other acts evidence?**

A district court should consider the Government's "alternative sources" of proof when weighing the probative value of other acts evidence under Rule 403. *Bell*, *supra*, 516 F.3d at 445. According to defense counsel, there is "ample" evidence that exists to show that Defendant was the person who engaged in the 2012 chats. First, the IP address used by "Hrtcnt" was traced to Defendant's mother's residence, and Defendant apparently admitted to being present there during the time frame of the May 2012 chats. (Doc. 28 at PageID 104.) Second, "Hrtcnt" told "love4pedo" that he was 30-years old, and the United States, in its Rule 404(b)(2) Notice, comments that Defendant had turned 30 a month prior to the May 2012 chats. (*Id.*) And, third, defense counsel represents that discovery makes "clear" that no one else associated with the residence was 30-years-old when the May 2012 chats took place. (*Id.*) This argument overreaches.

In *Bell*, the defendant was charged with possession of marijuana and cocaine with intent to distribute. 516 F.3d at 436. The district court admitted four prior state court drug convictions under Rule 404(b)(2) for the purpose of proving absence of mistake or accident and intent. (*Id.*) It was error to admit the evidence with respect to absence of mistake or accident because the case did not present that issue, opined the Sixth Circuit, and it was error with respect to intent because the prior distributions were not part of the same scheme or modus operandi as the present offense. *Id.* at 442–43. Moreover, the district court erred in the final step of its Rule 404(b)(2) analysis, because "the strength of this other evidence of intent[11] was so overwhelming that the evidence of Bell's prior convictions could only have been marginally probative at best." *Id.* at 444, 446. Here, the United States' evidence of identity is considerably less strong, such that admission of the 2005 chat would be compellingly probative. But the question of prejudicial impact obviously remains. *Id.* at 446.

In *United States v. Stout*, discussed *supra* at page 3 of this Order, the district court acknowledged the Government's need for the prior bad acts evidence to prove intent and knowledge, but noted that other means of proof existed—such as the testimony of the defendant's ex-wife that the Internet history files on their computer indicated that Stout had been searching for child pornography—to prove his intent "in a less prejudicial manner." 509 F.3d at 800. The Sixth Circuit affirmed the trial judge's ruling, and quoted extensively from the district court's opinion:

> The prior bad acts evidence is potentially prejudicial because it is both inflammatory and distracting. It is more lurid and frankly more interesting than the evidence surround the actual charges. Any jury will be more alarmed and disgusted by the prior acts than the actual charged conduct. As a consequence,

---

[11] The other evidence of intent consistent with distribution included recovery of more than 20 pounds of marijuana, packaged in small amounts, and over 90 grams of crack cocaine, as well as drug scales, a cutting board, baggies, cigar "blunts," and other drug paraphernalia. 516 F.3d at 446.

> the jury is likely to pay undue attention to it. . . . [T]here is a strong possibility that the jury will be improperly distracted from the primary evidence at hand.

*Id.* at 801.

After careful consideration, this Court does not believe that the 2005 chat and the testimony of Officer Peachey will "predominate" the trial. *See id.* Officer Peachey *posed* as a 14-year-old. In contrast to the circumstances in *Stout*, there was no betrayal of family friendship, no surreptitious filming in an area of the home where privacy is considered sacrosanct, and no actual 14-year-old victim. The probability that a jury would improperly consider the 2005 chat as propensity evidence thus is dramatically reduced, and a limiting instruction that the other acts evidence be considered for purposes of *identity only* should mitigate any danger of unfair prejudice.[12] *See United States v. Washam*, 468 F. App'x 568, 573 (6th Cir. 2012) ("[L]imiting instructions go a long way to reducing any possible prejudice from Rule 404(b) evidence.") (citing *United States v. Lattner*, 385 F.3d 947, 958 (6th Cir. 2004)).

### B. Defendant's Motions

Remaining for decision are rulings with respect to Defendant's Motion to Sever, or in the alternative, Bifurcate and Defendant's Motion to Exclude. The United States has represented that it is not seeking to introduce the fact of Defendant's 2005 state *conviction*, one that requires him to register as a sex offender. (Doc. 27 at PageID 75.) The Court concludes, therefore, that bifurcation of Count 3 is appropriate. In the event the United States secures a conviction on Count 1, the jury will be permitted to hear evidence of his state *conviction* in its case-in-chief

---

[12] *United States v. Hough*, also discussed *supra* at pages 3–4 of this Order, involves a very different set of circumstances than those before this Court. There the Government had direct evidence of knowledge and intent, and admissions by Hough that were relevant to identity, and thus the need for the evidence was not great. 385 F. App'x at 537. And on the seminal issue of unfair prejudice, the most recent allegations of child molestation were merely reports, and thus unproven. *Id.* Testimony by the victims—still children—might shift the focus of the trial from the federal charges (attempted receipt and possession of child pornography) to the prior acts, resulting in jury confusion. Even though the prior acts would have been admissible under Rule 414, they nonetheless were properly excluded by the trial judge under Rule 403. *Id.* at 536, 538

17

regarding Count 3, which accuses Defendant of a violation of § 2260A.  *See United States v. Never Misses A Shot*, *supra*, 2013 WL 3872837, at *3.  Regarding Defendant's Motion to Exclude, that Motion is well-taken with respect to any use of his prior *conviction* but denied with respect to its underlying facts.

### III. CONCLUSION

For the reasons articulated above, Defendant's Motion to Sever is **DENIED**, but his alternate Motion to Bifurcate (Doc. 19) is **GRANTED**; and Defendant's Motion to Exclude Prior Conviction (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**.  With respect to the United States' Notice of Intent to Introduce Evidence Pursuant to F.R.E. 404(b)(2) (Doc. 27), this Court determines that evidence of Defendant's acts that underpin his 2005 state law conviction will be **ADMISSIBLE** at trial for the sole purpose of identity.

**IT IS SO ORDERED**.

Dated:  April 4, 2017              S/Susan J. Dlott_____
                                   Judge Susan J. Dlott
                                   United States District Court